UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVA DUARTE and YESENIA DUARTE, a minor who sues by and through her mother and next friend, Eva Duarte, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | CV 99-BU-2913-S |
| ) VICTORIA INSURANCE GROUP, ) ) ) | **ENTERED** APR 28 2000 |
| Defendant. ) | |

Memorandum Opinion

In the remaining claims in this diversity action, Eva Duarte brings claims on behalf of herself and her minor daughter, Yesenia Duarte, (hereinafter sometimes collectively referred to as "Plaintiffs") against Victoria Insurance Group, Inc. ("Defendant") under Alabama law for breach of contract and bad faith failure to pay insurance claims. Now pending before is Plaintiffs' motion filed April 17, 2000 to compel the production of "any and all communications between [Defendant's] adjusters with respect to the handling of [Plaintiffs'] claim[s]." (Doc. No. 18). Defendant acknowledges that it has in its possession a computerized diary containing entries by its adjusters that details their handling of Plaintiffs' claims, but Defendant contends that this list of notes is protected by the work-product doctrine and attorney-client privilege. The Court concludes that Plaintiffs' motion to compel is due to be **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

On August 11, 1998, Plaintiffs were injured when the automobile in which they were riding as passengers collided with a pick-up truck driven by Alvin Bodine. Eustaquio Duarte, husband of Eva Duarte and father of Yesenia Duarte, was driving the vehicle in which Plaintiffs were riding. At the time of the accident, Bodine had liability insurance with The Guidant Insurance Group, while Eustaquio Duarte was insured by Defendant under a policy that included underinsured motorist coverage. Plaintiffs later asserted claims for such benefits under that policy. But when such claims went unpaid, Plaintiffs filed this suit, alleging that Defendant was liable under Alabama law for breach of contract and for the tort of bad faith failure to pay insurance claims.

After the case was removed from Alabama state court, the parties became embroiled in a discovery dispute. Plaintiffs filed a motion requesting that Defendant be required to produce, among other things, its "entire" claims file regarding Plaintiffs' claims. Defendant countered by arguing generally that some items in its claims file were protected by the attorney-client privilege and the work product doctrine. The Court noted that Defendants had failed to identify documents in the claims file and the privileges claimed with the specificity required under Fed. R. Civ. P 26(b)(5), but the Court concluded that, under the circumstances of this case, it would be unfair to infer a waiver of all privilege from such an omission. Instead, the Court denied the portion of Plaintiffs' motion to compel as it pertained to the "entire" claims file, ordered Defendant to supply Plaintiffs with a privilege log as required by Rule 26(b)(5), and allowed that Plaintiffs might re-file their motion to compel after receiving Defendant's log. Plaintiffs did just that. In the their renewed motion to compel, which is now before the Court, Plaintiffs asserted that Defendant should be compelled to produce all documents in the claims file reflecting communications made between Defendant's adjusters that pertain to Plaintiffs' claims for benefits.[1] The Court ordered Defendant to submit for in camera inspection

---

[1] By not referencing them in their present motion, Plaintiffs implicitly concede that a number of documents in the claims file listed on Defendant's privilege log are protected by the

the list of notes that it claims are privileged. Defendant complied with that order, and the Court will be filing the 26 pages of notes into the record under seal.

Defendant has also filed a motion for summary judgment on all claims, which is still pending. Plaintiffs have asked that they be given additional time to respond to the motion for summary judgment should the instant motion to compel be granted.

## II. DISCUSSION

In their motion, Plaintiffs request that Defendant be compelled to produce "any and all communications between [Defendant's] adjusters with respect to the handling of [Plaintiffs'] claim[s]." Defendant acknowledges that it possesses a computerized list of entries documenting communications between its adjusters who worked on Plaintiffs' claims. However, Defendant asserts that it should not be compelled to produce the notes, asserting that the notes are subject to protection under the work-product doctrine. Also, Defendant argues that portions of the notes "reference and memorialize" communications between its representatives and its legal counsel and that those portions are protected from discovery by the attorney-client privilege. Defendant has submitted the notes, which consume 26 pages, for in camera inspection.

### A. The Work-Product Doctrine

Defendant first contends that its computer generated claim file notes were prepared by its adjusters in anticipation of litigation and are protected by the work product doctrine. Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3). United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3rd Cir. 1988); Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 702 n.10 (8th Cir. 1998). That Rule provides in relevant part as follows:

> [A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or

---

attorney-client privilege, as asserted by Defendant.

>by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Thus, under the Rule, if a party demonstrates that materials in its possessions would otherwise be discoverable were prepared in anticipation of litigation, the materials are considered work product and become subject to a qualified privilege from discovery, which may be overcome only if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information by other means.[2] Logan v. Commercial Union Ins. Co., 96 F.3d 971, 976 (7th Cir. 1996).

The threshold issue is whether some or all of the notes on the computerized list were prepared by Defendant's adjusters "in anticipation of litigation" for purposes of Rule 26(b)(3). It is not required that a document be prepared after litigation has actually commenced in order to qualify as work product, see Nadler v. U.S. Dept. of Justice, 955 F.2d 1479, 1491-92 (11th Cir. 1992) (abrogated on other grounds by United States Dep't of Justice v. Landano, 508 U.S. 165 (1993)). On the other hand, "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege . . . ." Logan, 96 F.3d at 976 (quoting Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118 (7th Cir. 1983). By withholding all of the notes between its adjusters, Defendant appears to take the position that all of the notes are protected by

---

[2]Fed. R. Civ. P. 26(b)(3) gives even greater protection to "opinion work product," meaning materials prepared in anticipation of litigation that reveal the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." Such materials "enjoy[ ] a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1421-22 (11th Cir. 1994) (quoting In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977)).

the work product doctrine. Indeed, court have often noted that much, if not all, of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim. See, e.g., Logan, 96 F.3d at 977; Moore v. Tri-City Hosp. Authority, 118 F.R.D. 646, 649 n.1 (N.D. Ga. 1988); Carver v. Allstate Insurance Co., 94 F.R.D. 131, 134 (S.D. Ga. 1982). However, the fact that there is always some chance that an insurance claim could lead to a lawsuit does not mean that all documents prepared by insurance company employees in their routine investigation and processing of claims are insulated from discovery by the work product doctrine. See, e.g., Moore, 118 F.R.D. at 649. See also United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. Unit A February 12, 1981) ("[P]apers generated by an attorney who prepares a tax return are not within the work product privilege simply because there is always a possibility that the IRS might challenge a given return.")  Rather, courts generally have distinguished between documents generated by an insurance company "in the ordinary course of business" as a precaution against the remote prospect of litigation, which are not protected, and those prepared because "some articulable claim, likely to lead to litigation . . . has arisen," which may enjoy the privilege. Logan, 96 F.3d at 977 (emphasis original) (citations omitted). See also Kent Corp. v. NLRB, 530 F.2d 612, 623-24 (5th Cir. 1976) (holding prima facie showing of work product privilege made where "'the prospect of litigation (was) identifiable because of specific claims that (had) already arisen,'" quoting Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 47 F.R.D. 334 (S.D. N.Y. 1969)); Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D. Ind. 1991); Joyner v. Continental Ins. Companies, 101 F.R.D. 414, 415-16 (S.D. Ga. 1983); Carver, supra; Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co., 61 F.R.D. 115, 117-18 (N.D. Ga. 1977). Litigation need not necessarily be "imminent"; the privilege applies "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Davis, 636 F.2d at 1040.

    In the instant case, the Court's in camera examination of the notes reveals that

most of the entries were prepared by Defendant's adjusters not in anticipation of any particular litigation, but were generated, rather, in the ordinary course of investigating the accident and evaluating potential claims by all persons involved, including not only Plaintiffs but also Eustaquio Duarte, Bodine, and a passenger in his vehicle. Accordingly, the Court concludes that most of these notes are not protected by the work product privilege. On the other hand, it is evident that certain entries show that at some point Defendant's adjusters began to expectation that Plaintiffs' counsel might likely file suit with respect to Plaintiffs claims for underinsured motorist benefits. It is not an easy task which entries might constitute work product, as there is not a bright line between entries directed towards claims evaluation and those that fairly can be said to have been prepared by the Defendant's adjusters because of the prospect of likely litigation. However, the Court discerns that several entries are directed much more towards matters germane to litigation and trial strategy than to claims evaluation. The Court that those entries were prepared in anticipation of litigation for purposes of Fed. R. Civ. P. 26(b)(3). Those entries may, therefore, be protected under the work-product doctrine; they are as follows:

> (1) the entry on the top of page 24, which runs from "Discussed with Ed . . ." to ". . . other carrier."
>
> (2) the entry on page 24 dated "4/26/1999 3:18 p.m.," which begins, "Spoke with George . . . .";
>
> (3) the entry on page 25, dated "6/04/1999 4:37 p.m.," which begins, "Rec'd call from Atty. Marco Gonzalez . . .");
>
> (4) the last entry on page 25, dated 6/30/1000 12:15 p.m.," which begins, "I had received calls . . ." and continues onto the top of page 26 from "As far as . . ."; and
>
> (5) all the remaining entries on page 26.

However, the finding that these entries were prepared in anticipation of litigation does not necessarily mean that they are privileged from discovery under the work-product

doctrine. Plaintiffs might still show that they are entitled to some or all of the notes by demonstrating a substantial need and undue hardship sufficient to overcome the qualified privilege. Plaintiffs have presented no evidence or argument specifying why they would be entitled to these documents. Of course, where a plaintiff alleges that a defendant insurance company is liable for bad faith failure to pay a claim, "nearly all potential evidence of bad faith lies in the defendant's communications during the period of the allegedly wrongful conduct," and, therefore, it might be argued that preventing a plaintiff from overcoming the work product privilege and discovering private communications would deny him access to the only existing direct evidence that the insurer acted in bad faith. Logan, 96 F.3d at 977. However, where a plaintiff contends that a defendant insurance company is guilty of bad faith failure to pay a valid claim, the plaintiff need only show "some likelihood or probability that the documents sought may contain evidence of bad faith." Id. However, in this case, the Court has conducted an in camera examination of each communication sought by Plaintiffs, and the Court concludes that, even if totally disclosed, nothing in the notes on pages 24 through 26 supports the inference that Defendant acted in bad faith. Indeed, these notes clearly substantiate Defendant's assertion that it declined to pay underinsured motorist benefits to Plaintiffs because of genuine doubts as to whether Plaintiffs would be legally entitled to recover damages from Bodine in an amount in excess of the limits of Bodine's liability insurance. Based on Plaintiffs failure to offer any evidence or argument showing why they are entitled to these communications, and upon the Court's in camera examination, the Court concludes that Plaintiffs cannot overcome Defendant's claim of privilege as to the entries on pages 24 through 26 of the notes, set forth above. See id. Accordingly, Plaintiffs motion to compel is due to be denied as to those entries.

### B. Attorney-Client Privilege

Defendant also argues that some of the notes "reference and memorialize"

communications between its representative and its legal counsel and that those notes are protected by the attorney-client privilege. Defendant does not specify in its log which particular entries it considers to be so protected. However, upon its in camera inspection of the notes, the Court determines that only portions of three entries, each logged on April 20, 1999 by Jill Winans, another one of Defendant's adjusters, arguably fall under the attorney-client privilege. In the first entry, from 9:34 a.m, located near the bottom of page 21, Winans indicates that she telephoned Defendant's staff counsel to discuss specified legal questions. In the next entry, from 11:26 a.m., on the top of page 22, Winans wrote that a telephone conference was held with Bushnell. This entry has seven numbered subsections that contain from one to three sentences each. Numbers 1, 5, 6, and 7 summarize legal advice Bushnell provided to Defendant's employees at the teleconference regarding Plaintiffs claims. And the final entry, from 4:27 p.m, in the middle of page 23, states that Bushnell provided legal advice on a particular matter at another telephone conference.

    Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, that "parties may obtain discovery regarding any matter, not privileged." To preserve the liberal discovery contemplated by the federal rules of civil procedure, the burden falls on party opposing discovery to prove its entitlement to privilege for otherwise relevant documents. In re Air Crash Near Cali, Colombia on Dec. 20, 1995, 959 F.Supp. 1529, 1532 (S.D. Fla. 1997). State law controls the privileged nature of material sought in discovery in a diversity action. Fed. R. Evid. 501; In re Fink, 876 F.2d 84, 85 (11th Cir. 1989); Somer v. Johnson, 704 F.2d 1473, 1478 (11th Cir. 1983). Thus, the Court looks to Alabama law for the scope of the attorney-client privilege asserted by Defendant. See, e.g., Joiner v. Hercules, Inc., 169 F.R.D. 695, 697 (S.D. Ga. 1996); Shipes v. BIC Corp., 154 F.R.D. 301, 304 (M.D. Ga. 1994).

    In Alabama, the attorney-client privilege is governed by Alabama Rule of Evidence

502. Under Alabama Rule of Evidence 502(b), a client has a privilege to refuse to disclose confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between himself or his representative and his lawyer or his lawyer's representative. The privilege protects communications from the attorney to the client, as well as from the client to the attorney. See Ala. R. Evid. 502(b) advisory committee's notes (providing that the term "communication" includes "any knowledge that the attorney acquires from the client and any advice or counsel given to the client"); Ex parte Great Am. Surplus Lines Ins. Co., 540 So. 2d 1357 (Ala. 1989). While Alabama has relatively few appellate cases dealing with the attorney-client privilege in the corporate context, see Ala. R. Evid. 502(a)(2) advisory committee's notes, it is clear that a corporation may claim the privilege. See Ala. R. Evid. 502(a)(1); Ex parte Alfa Mut. Ins. Co., 631 So. 2d 858 (Ala. 1993). Moreover, Rule 502 specifies that the privilege applies to representatives of a client, including anyone who "for the purpose of effecting legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." Ala. R. Evid. 502(a)(2)(ii).

The Court has been unable to locate any Alabama case that is particularly instructive on the issue of whether a document concerning the substance of legal advice solicited and given that is placed in the insurance claim file is protected by the attorney-client privilege. However, the Court has discovered a number of cases indicating that the entries in question are protected by the attorney client privilege. See Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 16 n.11 (D. Mass 1997) (holding that a memorandum to the file by the insurance company's representative concerning the content of a telephone conversation with company's counsel is privileged); Taylor v. Temple & Cutler, ___ F.R.D. ___, 1999 WL 1581388, *11 (E.D. Mich. 1999) (holding that summaries of various telephone conversations with coverage counsel were privileged); Houston General Ins. Co. v. Superior Court In and For Alameda County, 108

Cal.App.3d 958, 166 Cal.Rptr. 904 (1980) (holding that portion of claims file designated as a "file activity log" containing notes of telephone conversations between insurance company's representative and corporate counsel was protected by attorney-client privilege). Based upon these cases, the Court concludes that the three entries concerning communications between Bushnell and Defendant's representatives are protected by the attorney client privilege.[3] Accordingly, Plaintiffs' motion to compel is due to be denied as to those entries.

## IV. CONCLUSION

In summation, the Court concludes that the following entries from Defendant's computerized list of notes are protected by the work-product doctrine:

(1) the entry on the top of page 24, which runs from "Discussed with Ed . . ." to ". . . other carrier."

(2) the entry on page 24 dated "4/26/1999 3:18 p.m.," which begins, "Spoke with George . . . .";

(3) the entry on page 25, dated "6/04/1999 4:37 p.m.," which begins, "Rec'd call from Atty. Marco Gonzalez . . .");

(4) the last entry on page 25, dated 6/30/1000 12:15 p.m.," which begins, "I had received calls . . ." and continues onto the top of page 26 from "As far as . . ."; and

(5) all the remaining entries on page 26.

In addition, the Court concludes that the following entries are protected by the attorney-client privilege:

(1) that portion of the entry on page 21, dated "4/20/1999 9:34 a.m.,"

---

[3] The Court would note that it finds that none of the entries it has determined are privileged, either on the grounds of the work-product doctrine or the attorney-client privilege, support the inference that Defendant acted in bad faith in failing to pay Plaintiffs' claims for underinsured motorist benefits.

beginning with "Called James Bushnell . . .";

(2) the portions of entry on the top of page 22, dated "4/20/1999 11:26 a.m.," numbered 1, 5, 6, and 7; and

(3) the entry on page 23, dated "4/20/1999 4:27 p.m.," which begins, "Telephone conference with Jim Bushnell . . . ."

Plaintiffs' motion to compel (Doc. No. 18) is due to be **DENIED** as to those entries listed above. It is due to be **GRANTED** as to all other entries in Defendant's computerized list of notes. Defendant will be **ORDERED** to produce to Plaintiffs on or before **MAY 3, 2000** a copy of the list of computerized notes, redacting those portions that the Court has held are privileged as set forth above. The Court will **ORDER,** that a complete copy of Defendant's list of computerized notes be filed under seal in the record.

The Court has reviewed the entire list of notes submitted by Defendant and does not believe that it would, even if fully disclosed, be dispositive as to any issue raised by Defendant's motion for summary judgment. However, the Court will, under Fed. R. Civ. P. 56, allow Plaintiffs until **MAY 18, 2000** to submit any additional evidence or argument in opposition to Defendant's motion for summary judgment. Defendant will be afforded until **MAY 25, 2000** to submit its reply brief. The motion for summary judgment will be deemed submitted on **MAY 25, 2000**.

**DONE and ORDERED** this 28th day of April, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE