FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA   00 MAY 26  PM 4: 07
SOUTHERN DIVISION          U.S. DISTRICT COURT
                           N.D. OF ALABAMA

EVA DUARTE and YESENIA )
DUARTE, a minor who sues by and )
through her mother and next friend, )
Eva Duarte, )
 )
    Plaintiffs, )
 )
    v. )                    CV 99-BU-2913-S
 )
VICTORIA INSURANCE )
GROUP, )                          ENTERED
 )
    Defendant. )                MAY 26 2000

Memorandum Opinion

In the remaining claims in this diversity action, Eva Duarte ("Eva") brings claims on behalf of herself and her minor daughter, Yesenia Duarte ("Yesenia"), (hereinafter sometimes collectively referred to as "Plaintiffs") against Victoria Insurance Group, Inc. ("Victoria") under Alabama law for breach of contract and bad faith failure to pay an insurance claim. Now pending before the Court is Victoria's motion for summary judgment, filed February 29, 2000. (Doc. No. 11). The Court concludes that Victoria's motion, which is now ripe for decision, is due to be **GRANTED IN PART**, as it pertains to the bad faith claims of both Plaintiffs and to Eva's contract claim, **AND DENIED IN PART**, as it pertains to Yesenia's contract claim.

## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present.

*34*

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II. BACKGROUND[1]

On the morning of August 11, 1998, an automobile driven by Eustaquio Duarte ("Eustaquio") collided head-on with a pick-up truck driven by Alvin Bodine. When the accident occurred, Plaintiffs were passengers in the car operated by Eustaquio, who is

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Eva's husband and Yesenia's father.  As a result of the collision, Plaintiffs were injured. At the time of the accident, Bodine was insured by Guidant Insurance Group ("Guidant"), which provided him with liability coverage in the amount of $25,000 per person and $50,000 per accident.  Eustaquio was insured with Victoria, under a policy that included underinsured motorist coverage.  Plaintiffs were covered under this policy with Victoria.

After the accident, Plaintiffs retained an attorney.  In a letter dated October 7, 1998, he gave notice to Victoria that he was representing the Duartes and of a "possible uninsured or under-insured motorist claim which may be asserted by the Duarte's (sic) family under the policy provisions . . . ." Pam Kovitz, a claims adjuster for Victoria acknowledged receipt of that correspondence and stated in a reply that Victoria was continuing its investigation of the accident.  As part of that investigation, Kovitz took a statement from Eva in which she alleged that she injured her forehead on the windshield, which required five stitches; that she has headaches; that her right knee was swollen; and that her back hurt.  Eva also told Kovitz that Yesenia's injury was a lacerated forehead, which required seven stitches.

On November 9, 1998, Victoria received information concerning medical treatment afforded to Plaintiffs, including "medical summary sheets" supplied by Plaintiffs' attorney.  The first of these summary sheets list actual medical expenses of $569.42 for Yesenia and $2,032.98 for Eva.  Meanwhile, on November 23, 1998, Kovitz sent a letter to Bodine indicating that Victoria had completed its investigation into the facts surrounding the accident.  Kovitz's letter continued, "The facts presented indicate each party was 50% at fault for this loss."  Victoria agreed to pay to Bodine $525.39, half of the estimated cost to repair the damage to his truck.

In late February 1999, Plaintiffs' counsel sent Victoria a packet of additional information on Plaintiffs' medical treatment, which showed past expenses in the amounts of $947.42 for Yesenia and $2,032.98 for Eva.  Also included were black and white

photocopies of photographs that ostensibly were to show the scars on the forehead of each Plaintiff.  Finally, Plaintiffs' counsel provided updated medical summaries that included estimates for future "scar revision procedures," amounting to $10,000 for Eva and $20,000 for Yesenia.  This brought the total past and future estimated medical expenses listed to $12,032.98 for Eva and $20,947.98 for Yesenia.

On March 8, 1999, Jill M. Winans, another Victoria claims adjuster, wrote to Plaintiffs' counsel, acknowledging receipt of the updated medical information.  She further indicated, however, that the black and white photocopies submitted were not clear enough to see the Plaintiffs' scars, so she requested that Plaintiffs' counsel send her copies of current color photographs.  She concluded by further asking Plaintiffs' counsel to supply information regarding the amount of the liability covered under Bodine's policy.

On April 16, 1999, Plaintiffs' counsel wrote to Victoria stating that the limits of Bodine's liability coverage with Guidance were $25,000 per person and $50,000 per accident and that the Plaintiffs "will be making a claim for under-insured motorist coverage."  This letter concluded, "In the meantime, decide whether you intend to waive any subrogation rights you might have or rather advance the sum of $50,000."  Winans sent a reply dated April 20, 1999, acknowledging receipt of the request that Victoria waive its subrogation rights or advance Plaintiffs $50,000.  Winans continued, however, that before such an election could be made, she had to be advised (1) whether Guidant had actually made a policy limits offer to Plaintiffs; (2) whether any offers of settlement have been made and, if so, in what amounts; and (3) whether Plaintiffs had agreed to accept Guidant's offers of settlement.

On April 26, 1999, Plaintiffs' counsel told Kovitz over the telephone that the Duartes intended to accept a $25,000 offer from Guidant to settle Yesenia's claims.  That same day, Kovitz sent a letter to Plaintiffs' counsel stating, "In the event we make

payment under the Insured's Underinsured Motorist Coverage, we will waive our subrogation rights." That letter also repeated the request that Plaintiffs' counsel send color photographs of Plaintiffs' scars.

On May 13, 1999, Plaintiffs' counsel notified Kovitz that the Duartes had accepted the $25,000 settlement from Guidant regarding Yesenia's claims and that such agreement was to be submitted for court approval in a pro ami petition. Plaintiffs' counsel also stated that negotiations regarding settlement of Eva's claims were ongoing. On May 27, 1999, an Alabama state court entered an order approving the pro ami settlement, whereby Bodine, who expressly denied liability, would pay $25,000 in exchange for a complete release of all claims against him made by or on behalf of Yesenia.

After failing to receive payment on Plaintiffs' underinsured motorist benefits, Plaintiffs' counsel filed this action against Victoria and Bodine[2] in Jefferson County, Alabama Circuit Court on June 18, 1999. In Count I, Plaintiffs asserted claims against Bodine for negligence and/or wantonness.[3] In Count II, Plaintiffs alleged that Victoria breached its obligation to pay underinsured motorist benefits under the policy issued to Eustaquio. Under that count, each Plaintiff sought $20,000 in damages, representing the limits of such coverage under the policy. In Count III, Plaintiffs sought $1,000,000 in punitive damages from Victoria for its alleged bad faith failure to pay underinsured motorist benefits.

On September 23, 1999, while the case was still in state court, Eva settled with regard to her claims against Bodine. Under the terms of that agreement, Eva was to

---

[2]Plaintiffs also named as defendants numerous fictitious parties, which are of no import here.

[3]Notwithstanding that Yesenia's claims against Bodine had already been resolved, at least ostensibly, by virtue of the pro ami settlement, the complaint suggests that the claims in Count I alleging that Bodine was liable for "negligence and/or wantonness" were asserted on behalf of both Eva and Yesenia.

receive $20,000 in exchange for complete releasing of all claims against Bodine, who denied liability.  On October 1, 1999, counsel for Plaintiffs and Bodine filed joint stipulations that Bodine was due to be dismissed from the action, based upon the agreement reached as to Eva's claims and the pro ami settlement of Yesenia's claims approved in the prior state court proceeding.  It was only at this time that Victoria became aware that Eva had settled her claims against Bodine and executed a release.

On October 7, 1999, the state court dismissed Bodine from the lawsuit.  On November 1, 1999, Victoria removed the case to this Court.  See 28 U.S.C. §§ 1441, 1446(b).  This Court has jurisdiction under 28 U.S.C. § 1332.  On February 29, 2000, Victoria filed its motion for summary judgment on all remaining claims.

## III.  DISCUSSION

### A.  Bad Faith Claims

Plaintiffs claim that Victoria is liable under Alabama tort law for bad faith failure to pay their insurance claims.  Victoria argues that it is entitled to summary judgment on these claims.  Alabama substantive law controls the Court's analysis of these claims.  See Venn v. St. Paul Fire and Marine Ins. Co., 99 F.3d 1058, 1064 (11th Cir. 1996); Guaranty Trust Co. v. York, 326 U.S. 99 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

An actionable tort arises under Alabama law from an insurer's intentional refusal to settle a claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether or not there was any lawful basis for such refusal.  See Chavers v. National Security Fire & Cas. Ins. Co., 405 So. 2d 1, 7 (Ala.1981); National Security Fire & Cas. Co. v. Bowen, 417 So. 2d 179 (Ala.1982); Gonzalez v. Blue Cross/Blue Shield of Alabama, 689 So. 2d 812 (Ala. 1997).  Further, a policyholder may bring  such a claim with respect to her insurer's handling of an uninsured or underinsured motorist claim.  See, e.g., LeFevre v. Westberry, 590 So. 2d 154, 160-61 (Ala. 1991); Ex Parte Government Employees Ins. Co., 729 So.2d 299, 306

(Ala. 1999). The elements of a bad faith claim were summarized in <u>Bowen</u> as follows:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

> 417 So.2d at 183.

Victoria argues that it is entitled to summary judgment on the bad faith claims based upon Plaintiffs' alleged inability to prove element "(c)," the absence of any reasonably legitimate or arguable reason for its refusal to pay.

Victoria first contends that it had an arguable reason to withhold payment on Plaintiffs' underinsured motorist claims because it appears that both drivers, Bodine and Eustaquio, were at fault for causing the accident. Victoria emphasizes that under the policy it is only obligated to pay Plaintiffs underinsured motorist benefits for damages each is "legally entitled to recover" from Bodine. And because there is a substantial question as to who was at fault, Victoria reasons, it is entitled to summary judgment on the bad faith claims because it was entitled to delay payment until it was established that Plaintiffs could recover from Bodine.

It is true that under Alabama law an underinsured motorist carrier is not liable to its insured until the tort liability of the underinsured motorist has been determined, and the carrier has the right to delay payment until its liability is established. See <u>Bowers v. State Farm Mut. Auto. Ins. Co.</u>, 460 So. 2d 1288, 1290 (Ala. 1990). However, there are two glaring problems with Victoria's position. First, because it is undisputed that Plaintiffs were merely passengers in the vehicle driven by Eustaquio and there is no

allegation or evidence that Plaintiffs were themselves guilty of negligence, implicit in Victoria's argument seems to be the assumptions that Eustaquio was contributorily negligent and that such might have precluded Plaintiffs from recovering from Bodine. It is true that Eustaquio's contributory negligence found to be a proximate cause of the accident would bar <u>him</u> from recovering either in tort from Bodine or under the underinsured motorist coverage of the policy. See <u>Howard v. Alabama Farm Bureau Mut. Cas. Ins. Co.</u>, 373 So. 2d 628, 630 (Ala. 1979). However, Alabama law is clear that his negligence would not be imputed to his minor daughter riding as a passenger. <u>Nunn v. Whitworth By and Through Whitworth</u>, 545 So. 2d 766 (Ala. 1989). Nor would Eustaquio's contributory negligence generally be imputable to his passenger wife, absent some specific reason to do so. See <u>Kinard v. Carter</u>, 518 So. 2d 1248, 1250 (Ala. 1987); <u>Seitz v. Heep</u>, 243 Ala. 376, 10 So. 2d 150 (1942). Accordingly, it appears that one or both Plaintiffs would have been entitled to recover from Bodine even if both drivers were at fault. The second problem with Victoria's argument is even more significant. That problem is that there is ample evidence indicating that Victoria did not, in fact, withhold payment of underinsured benefits from Plaintiffs <u>because</u> it questioned who was at fault for the accident. The record indicates that by November 1998 Victoria reached a final determination that both drivers were partially at fault, and yet Victoria continued thereafter to withhold underinsured motorist benefits from Plaintiffs and investigate their claims without ever suggesting that doubts as to Bodine's liability were the reason for the delay in payment. Indeed, in addition to finding that Bodine was at least partially at fault, Victoria's adjusters also expressly acknowledged in their file notes that Plaintiffs were considered negligence-free passengers. Because the evidence indicates that Victoria did not actually contemplate the issue of fault for the accident as a reason for withholding Plaintiffs' underinsured motorist benefits, Victoria cannot prevail at summary judgment on the bad faith claims using that justification. See <u>King v. National Foundation Life Ins.</u>

Co., 541 So. 2d 502, 505 (Ala. 1989) (holding that insurer could not defeat a plaintiff's bad faith claim by relying on reasons not known to or actually considered by it in denying the insured claim under the policy).

However, if an insurer can show it relied upon even one arguable reason to deny coverage, it is not guilty of bad faith. McLaughlin v. Alabama Farm Bureau Mutual Casualty Insurance Co., 437 So. 2d 86, 91 (Ala. 1983). Victoria also alleges that the evidence shows it delayed payment on and was still evaluating Plaintiffs' underinsured motorist claims because it had legitimate and genuine doubts about whether either Plaintiff was legally entitled to recover from Bodine an amount of damages in excess of the $25,000 per person limits of Bodine's liability insurance. Because this is an arguable or debatable reason it relied upon to delay payment under the policy, Victoria contends, Plaintiffs' bad faith claims do not lie. The Court agrees.

Underinsured motorist coverage applies where "[t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover." § 32-7-23(b)(4), Ala. Code 1975. Thus, it is coverage in excess of liability coverage, and is available to a claimant only after the claimant has exhausted available liability coverages. Alabama Insurance Guaranty Association v. Hamm, 601 So. 2d 419, 423 (Ala. 1992). Under Alabama law, an insured may be entitled to recover underinsured motorist benefits even though she settles with the tortfeasor or his liability insurer for an amount less than the limits of the tortfeasor's liability policy. State Farm Mut. Auto. Ins. Co. v. Scott, 707 So. 2d 238 (Ala. Civ. App. 1997). However, the liability of the underinsured motorist carrier is limited to amounts in excess of the tortfeasor's liability policy limits, rather than to amounts in excess of a lesser settlement sum actually paid by the tortfeasor or his liability insurer. See Illinois Nat. Ins. Co. v. Kelley, ___ So. 2d ___, ___, 2000 WL 283897, *2 (Ala. Civ. App. 2000).

Here, the underinsured motorist coverage policy under which Plaintiffs sought to recover states, in pertinent part:

> [Victoria] will pay for damages for bodily injury, suffered by an insured, which an insured is legally entitled to recover from the owner or operator of an underinsured car. The bodily injury must be caused by an accident and arise out of the ownership, maintenance or use of the underinsured car.
>
> [Victoria will pay such damages to the extent that the limit of liability of this endorsement exceeds the bodily injury limits collected from the owner or operator of the underinsured car. We will pay damages only after the limits of liability of the bodily injury liability bonds, insurance policies and deposits of cash or securities covering the underinsured car have been exhausted.

(Emphasis omitted). It is undisputed that the limits of Bodine's liability coverage with Guidant is $25,000 per person and $50,000 per accident. Accordingly, Victoria would be required to pay underinsured motorist benefits only if and to the extent that one or both Plaintiffs would be "legally entitled to recover" from Bodine an amount of damages in excess of the $25,000 per person limits of Bodine's liability coverage. See Illinois Nat. Ins. Co. v. Kelley, supra.

Under Alabama law, there can be no breach of an uninsured or underinsured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover. Quick v. State Farm Mut. Auto. Ins. Co., 429 So.2d 1033, 1035 (Ala. 1983). While an insured need not necessarily sue the tort-feasor and receive a judgment in his favor in order to show that she is "legally entitled to recover," she must be able to establish fault on the part of the underinsured motorist that gives rise to damages and must be able to prove the extent of those damages. LeFevre, 590 So. 2d at 157; Quick, supra. See also State Farm Mut. Auto. Ins. Co. v. Baldwin, 764 So. 2d 773, 778-79 (11th Cir. 1985). However, where the evidence of the extent of damages is disputed, the insured has not proven that she is "legally entitled to recover" under the policy, and an element of a bad faith claim is, therefore, missing. LeFevre, 590 So. 2d at 160. Similarly, mere

delay in payment does not rise to the level of bad faith if there is a bona fide dispute on the issue of damages. Id., 590 So. 2d at 161. Finally, the Alabama Supreme Court has indicated that where the amount of damages controverted relates to an item that is resistant to precise calculation, it is "doubtful" that an insured could "ever" prove the amount of the insurer's liability with the specificity necessary to recover on a bad faith claim. See Aetna Cas. and Sur. Co., Inc. v. Beggs, 525 So. 2d 1350, 1352-53 (Ala. 1988) ("With only punitive damages recoverable in wrongful death cases and with no standards for determining excessiveness or inadequacy (if such damages can be inadequate in wrongful death cases, except what trial or appellate courts consider to be awards of amounts that indicate prejudice or passion, it is doubtful that an insured could ever prove the amount of an insurer's liability under uninsured motorist coverage in a wrongful death case with the specificity necessary to recover against an insurer for bad faith in failing to negotiate or pay a wrongful death claim under uninsured motorist coverage.") (Citations omitted).

The record indicates that the materials in Victoria's possession regarding Plaintiffs' injuries and medical care indicated that the actual cost of their medical care had been only $947.42 for Yesenia and $2,032.98 for Eva. Victoria acknowledges that it also received from Plaintiffs' counsel estimates for "future scar revision" for each Plaintiff that would bring the medical expense totals to $12,032.98 for Eva and $20,947.98 for Yesenia. But, as Victoria suggests, even assuming both that such procedures are actually required and that the cost estimates for them are accurate, there is still a discrepancy of several thousand dollars between those alleged damages and the $25,000 per person limits of Bodine's liability policy. Thus, the "medical summaries" and other materials submitted to Victoria regarding the extent of Eva and Yesenia's injuries and resulting expenses did not affirmatively show that either was entitled to recover damages over and above the $25,000 per person limit of Bodine's liability policy or in what amount. Further, because

each Plaintiff's claimed expenses submitted to Victoria are less than the limits of Bodine's liability policy, it appears that Plaintiffs would be relying upon damages for pain and suffering to make up the difference. However, compensatory damages for pain and suffering, like the damages for wrongful death considered in Beggs, supra, cannot be ascertained using a fixed standard, and the amount is left to the sound discretion of the jury, subject to correction only for clear abuse or passionate exercise of that discretion. Daniels v. East Alabama Paving, Inc., 740 So.2d 1033, 1044 (Ala. 1999) (quoting Power Co. v. Mosley, 294 Ala. 394, 401, 318 So.2d 260, 266 (1975)). Accordingly, the amount of damages for pain and suffering is almost always indeterminate. Because the evidence regarding the amount of Plaintiffs' damages was uncertain, Victoria had an arguable or debatable reason to delay paying Plaintiffs' underinsured motorist claims. LeFevre, 590 So. 2d at 157; Quick, supra. Therefore, the Court determines that Victoria's motion for summary judgment is due to be granted with respect to Plaintiffs' bad faith claims.[4]

### B.  Contract Claims

Each Plaintiff also asserts a claim alleging that Victoria's failure to pay her underinsurance motorist benefits subjects Victoria to liability under Alabama law for breach of contract. Victoria counters that it is entitled to summary judgment on both of these contract claims on the ground that Plaintiffs filed the instant lawsuit without its consent. Victoria also argues that it is entitled to summary judgment on Eva's contract claim because she settled her claims against Bodine and executed a release without giving Victoria prior notice or obtaining its consent. Alabama law governs the Court's analysis of these claims and the construction of the insurance contract upon which they are

---

[4]The Court would note that it appears from the materials in the record that, after the expiration of the deadline for their response to Victoria's motion for summary judgment, Plaintiffs noticed the depositions of Pam Kovitz and E. Paskel, two of the Victoria's adjusters evaluating Plaintiffs'underinsured motorist claims. However, Plaintiffs have not suggested that these depositions must be taken or other discovery must be had before the instant motion for summary judgment is resolved. See Fed. R. Civ. P. 56(f).

founded.  <u>Dempsey v. Auto Owners Insurance Co.</u>, 717 F.2d 556, 559 (11th Cir. 1983).

### 1.  The "Consent-To-Sue" Exclusion

Victoria points out that the policy under which Plaintiffs seek to recover contains an exclusion providing, "Uninsured/Underinsured Motorists Bodily Injury Coverage does not apply to an insured . . . if an insured or the legal representative of an insured files suit . . . without [Victoria's] written consent."  It is undisputed that Plaintiffs did not obtain Victoria's written consent before filing this action.  Therefore, Victoria argues, Plaintiffs filing of the action breached the terms of the policy and precludes either of them from recovering under it.  The Court disagrees.

Alabama appellate courts do not appear to have construed a "consent-to-sue" exclusion exactly like the one in the policy here, which provides for a complete forfeiture of coverage if the insured brings suit without the insurer's consent.  However, those courts have held that provisions stating the insurer would not be bound by any judgment obtained in an action against the uninsured motorist which had been prosecuted by the insured without the insurer's consent are not against public policy and may be valid, as it serves the important purposes of minimizing the likelihood of collusion between an insured and an uninsured motorist.  See <u>Champion Ins. Co. v. Denney</u>, 555 So. 2d 137, 139 (Ala. 1989); <u>Gulf American Fire & Casualty Co. v. Gowan</u>, 283 Ala. 480, 218 So. 2d 688 (1969).  In addition, it is well-established law in Alabama that clauses requiring an insured to obtain the insurer's consent before settling with an alleged tort-feasor or his liability carrier, upon penalty of forfeiture of underinsured motorist benefits, may also be valid and binding upon the insured, because such provisions, like "consent-to-sue" clauses, protect the insurer's right to subrogation and minimize the possibility of collusion between the insured and the tort-feasor at the expense of the underinsured motorist carrier.  See <u>Overstreet v. Safeway Ins. Co. of Alabama</u>, 740 So. 2d 1053 (Ala. 1999); <u>Allstate Ins. Co. v. Beavers</u>, 611 So. 2d 348 (Ala. 1992); <u>Lambert v. State Farm</u>

Mutual Auto. Ins. Co., 576 So. 2d 160 (Ala. 1991).  Because Alabama courts have upheld the validity of both clauses prohibiting an insured from settling with tort-feasors without the insurer's consent and clauses pertaining to the effect of judgments against tort-feasors without the insurer's consent, the Court predicts that Alabama appellate courts would, at least in some circumstances, likely enforce consent-to-sue clauses providing for the complete forfeiture of underinsured benefits, on the basis that all of these types of clauses effectively serve very similar purposes.

In Denney, though, the Alabama Supreme Court held not binding on an insured a policy provision stating that a judgment obtained in an action prosecuted without the insurer's consent would not be "conclusive" as to the insurer.  In that case, the insured, through counsel, alerted her insurer of the possibility of an uninsured motorist claim.  555 So. 2d at 138.  Later, she sued the uninsured motorist, immediately forwarding a copy of the complaint and the summons to the insurer, offering that it might wish to respond.  Id.  However, she did not obtain the insurer's written consent to prosecute her action, as required by her policy.  After the insured obtained a default judgment for $100,000 against the tort-feasor, she sued her insurer for uninsured motorist benefits.  Id.  The trial court entered a summary judgment against the insurer for the $20,000 limit of the insured's policy.  Id.  On appeal, the insurer argued that the amount of the default judgment was not "conclusive" as to the insurer in the suit for uninsured motorist benefits, because the insured has not obtained the its written consent to sue the tort-feasor, as per the policy.  Id. at 139.  The Alabama Supreme Court disagreed, reasoning as follows:

> The insurer was privy to all relevant information regarding the insured's action against the uninsured motorist. The insurer received a copy of the summons and complaint and the accompanying cover letter, which suggested that it might wish to respond to the complaint. The underlying purpose for including the consent to sue clause in the policy is to protect the insurer from unknown or secret actions taken by the insured and the

> uninsured motorist.  Once the insurer is placed on notice of the tort action
> and given the opportunity to intervene, this purpose is satisfied.

Id.

The Court concludes that Plaintiffs' act of filing of suit in this case against Bodine without the written consent of Victoria does not bar their contract claims for underinsured motorist benefits. As an initial matter, it is logical to assume that Alabama courts would apply even greater scrutiny to a consent-to-sue clause providing for the forfeiture of benefits, given the harshness of that result, than they would to provisions stipulating merely that the insurer would not be bound by a judgment obtained in a suit brought without the insurer's consent.  See, e.g., Employers Nat'l Ins. Co. v. Parker, 286 Ala. 42, 46-48, 236 So. 2d 699, 702-04 (1970) (refusing to enforce a "consent-to-sue" provision forfeiting uninsured motorist coverage where the insurer had, before the insured filed suit against the tort-feasor, expressly denied the claim on the basis that the policy had been canceled before the accident).  See also Gowan, 283 Ala. at 484-85, 218 So. 2d at 691-92 (drawing a clear distinction between "older" consent-to-sue provisions where coverage may be forfeited and those where the insurer merely stipulates that it will not be bound by a judgment obtained in a prosecution without its consent).  The difference in the consequences of the insured's failure to comply with the policy terms alone might suggest that the Alabama Supreme Court would be more reluctant to enforce the consent-to-sue provision in this case than they were in Denney.  But in addition, the facts of this case further mitigate against the application of the policy exclusion urged by Victoria. First, the Denney court found that the purpose of the consent-to-sue provision in that case was satisfied where the insurer was merely given notice of the insured's suit against the third-party tort-feasor and a clear opportunity to intervene to protect its interests.  In the instant case, Victoria was actually named as a party-defendant.  Accordingly, Victoria was in an even better position to protect its interests with respect to the suit than was the insurer in Denney.  Second, the insurer in Denney could at least plausibly argue that it

had suffered prejudice in being bound by the amount of the judgment, which was obtained by default, in the suit brought without its consent.  Here, by contrast, no judgment was obtained.  It might be argued that the Plaintiffs' acts of settling and releasing their claims against Bodine without proper notice prejudiced Victoria's subrogation rights,[5] but the act of filing suit against Bodine, in and of itself, created no adverse consequences for Victoria.  See Motor Vehicle Acci. Indemnification Corp. v. McTootle, 37 Misc. 2d 988, 990, 236 N.Y.S.2d 588, 590 (Sup. Ct. 1963) (holding that plaintiff's voluntary termination of his lawsuit against the tort-feasor without settlement did not violate the consent-to-sue or consent-to-settle provisions of his uninsured motorist policy, as the discontinuation "concluded no one, and did not constitute an estoppel or bar in any sense.")  Victoria had notice of the suit and was afforded ample opportunity to protect its interests with respect to the filing of the suit.  In addition, the act of filing of the suit did not in itself prejudice Victoria in any way.[6]  The Court concludes that the purposes underlying the consent-to-sue exclusion were satisfied in this case and that

---

[5]Victoria does, in fact, contend that it is also entitled to summary judgment on Eva's contract claim because she settled her claims against Bodine without giving notice to Victoria or obtaining its consent, as provided in the policy.  That argument will be addressed in text below.

[6]The Court would further note that, to the extent the instant action originally alleged tort claims against Bodine on behalf of Yesenia, its filing appears to have been superfluous.  It is undisputed that, prior to the filing of this action, Yesenia's claims against Bodine were settled and approved in the pro ami hearing, whereby all claims arising out of the accident that might have been asserted on her behalf against Bodine were released.  Obviously, this release would have been a complete and valid defense to the tort claims ostensibly asserted on behalf of Yesenia against Bodine in this action.  Indeed, that release of Yesenia's claims, along with the subsequent settlement of Eva's claims against Bodine, was expressly acknowledged as the justification for dismissing Bodine from this action.  In any case, the fact that Yesenia's claims were settled and released prior to the filing of this lawsuit makes it that much more difficult to conceive of that filing as in any way prejudicial to Victoria.  There might be a potential argument that the prior release Yesenia's claims against Bodine without proper notice prejudiced Victoria's subrogation rights and violated the terms of the policy endorsement.  However, Victoria does not assert that specific ground in support of its motion for summary judgment, and the evidence appears to be uncertain as to that issue in any event.

Victoria is not entitled to summary judgment as to either Plaintiff's contract claim on this ground.

### 2. The "Consent-To-Settle" Exclusion

Victoria also argues that it is entitled to summary judgment as to Eva's contract claim because, subsequent to the filing of this lawsuit in state court, she settled her claims against Bodine without giving Victoria prior notice or obtaining its consent.[7] The policy endorsement in this case provides:

> A person seeking Underinsured Motorists Bodily Injury Coverage must promptly . . . notify [Victoria] in writing by certified or registered mail of a tentative settlement between the insured and the insurer of the underinsured car and allow [Victoria] 30 days to advance a payment to the insured in an amount equal to the tentative settlement to preserve [Victoria's] rights against the insurer, owner or operator of such underinsured car.
>
> Exclusions
> Please read these carefully. If any exclusion applies, an insured will not have coverage for an accident or loss.
>
> Uninsured/Underinsured Motorists Bodily Injury Coverage does not apply to an insured . . . if an insured or the legal representative of an insured . . . makes a settlement without [Victoria's] written consent.

(Emphasis omitted).

As noted previously, Alabama recognizes that clauses requiring an insured to obtain the insurer's consent before settling with an alleged tort-feasor or his liability carrier, upon penalty of forfeiture of underinsured motorist benefits, may be valid and binding upon the insured, because such provisions protect the insurer's right to subrogation and minimize the possibility of collusion between the insured and the tort-feasor at the expense of the underinsured motorist carrier. See Overstreet; Beavers;

---

[7]Victoria does not argue that it is entitled to summary judgment on Yesenia's contract claim based upon the fact that she entered into a settlement with Bodine. See note 5, supra.

Lambert, supra.  With those purposes in mind, the Alabama Supreme Court in Lambert established a six-step procedure to be followed in cases where an insured who wishes to pursue an underinsured motorist claim against his carrier also desires to settle her claims against the tort-feasor and the tort-feasor's liability insurer.  That procedure is as follows:

> (1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.
>
> (2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
>
> (3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
>
> (4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
>
> (5) If the uninsured motorist insurance carrier refuses to consent to a

settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor's insurer.

(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer.

576 So.2d at 167.

Examining the facts of this case in light of the procedure outlined above, the Court concludes that Eva's contract claim against Victoria is precluded because she failed to afford Victoria proper notice of her $20,000 settlement with Bodine. Plaintiffs' counsel did put Victoria on notice of Eva's possible underinsured motorist claim and of the fact that she was attempting to settle her claims against Bodine. However, once Eva tentatively agreed to enter into a settlement that would prejudice Victoria's subrogation rights, she was required before entering into the settlement to notify Victoria of the specifics of the proposed settlement and afford Victoria a reasonable time to either refuse to consent to the settlement, waive its right of subrogation, or deny any obligation to pay underinsured motorist benefits. See Overstreet, 740 So. 2d at 1059; Beavers, 611 So. 2d at 353; Lambert, 576 So. 2d at 167. Victoria has presented evidence indicating that Eva failed to do so, and Eva has offered nothing in contradiction.

However, in an effort to salvage her contract claim, Eva asserts, "On April 16, 1999, [Victoria] agreed to waive [its] subrogation rights," which, she seems to imply, excused her from having to notify Victoria as to the terms of her settlement with Bodine. In support of this argument, she refers the Court to several letters sent between her counsel and Victoria. The Court might assume that if Victoria had previously waived its subrogation rights with respect to Eva's claim, then such would mean that she was free

to settle with Bodine without giving Victoria prior notice, because the very purpose of the notice requirement is to protect Victoria's subrogation rights. However, none of the letters referenced by Plaintiffs' counsel nor any other evidence indicates that Victoria waived its subrogation rights as to Eva's claim against Bodine. Accordingly, the Court concludes that Eva's failure to notify Victoria of the specifics of her settlement with Bodine operates to preclude her recovery under the policy, and Victoria's motion for summary judgment is due to be granted as it pertains to Eva's contract claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that Victoria's motion for summary judgment (Doc. No. 11) is due to be **GRANTED IN PART,** as it pertains to Plaintiffs' bad faith claims and Plaintiff Eva Duarte's contract claim, and **DENIED IN PART,** as it pertains to Plaintiff Yesenia Duarte's contract claim. Therefore, the bad faith claims of both Plaintiffs and the contract claim of Plaintiff Eva Duarte are due to be **DISMISSED WITH PREJUDICE,** based upon the Court's determinations that there exists no genuine issue of material fact and that Victoria is entitled to judgment as a matter of law on such claims. Accordingly, Yesenia's contract claim is the sole claim remaining viable in this action. **The Court strongly encourages the parties to use their best efforts to settle this remaining claim, which, according to the complaint, has a maximum value of $20,000.**

DONE and ORDERED this 26th day of May 2000,

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE